## CHARLES WARREN COOPER v. STATE OF MARYLAND

[No. 398, September Term, 1969.]

*Decided May 26, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Orrin J. Brown, III,* for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Richard J. Kinlein, State's Attorney for Howard County,* and *Richard B. Talkin, Assistant State's Attorney for Howard County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted at a court trial of robbery and sentenced to three years' imprisonment. He contends on

this appeal that the evidence was insufficient to support the conviction.

The evidence adduced at the trial showed that on July 18, 1969 at approximately 11:15 p.m., Jack Glazer was in the illuminated parking lot of the Laurel Raceway looking for his car when appellant, whom he thought to be an employee of the Raceway, volunteered to assist him. Glazer had been at the Raceway for several hours and was "high" from drinking. He was coatless and wearing Bermuda shorts, the pockets of which, according to an eyewitness, "sort of stuck open" revealing "some sort of bills" in the left front pocket. Appellant's offer of assistance being accepted by Glazer, he approached Glazer from the left side. Glazer testified that thereafter appellant "stuck his hand in my left pocket and grabbed all my money and started to run." Asked whether the money was "down in your pocket or was it sticking out of your pocket," Glazer replied that "It was in my pocket"; that appellant reached "all the way in" and he felt appellant's hand in his pocket; that appellant "knew precisely where the money was"; and that the incident "happened in a few seconds and it startled me." Glazer testified that $70.-00 in loose bills was taken, one or two being 20's and the remainder 10's. Asked whether he felt anything other than appellant's hand in is pocket, Glazer said, "Well, I —well, like he put his hand, *maybe*, on my back."

Glazer's companion Harold Schenker witnessed the crime. He testified that appellant had "gotten behind" Glazer and "had sort of jostled with him, put his hand in his pocket and took some money and he then started to run away." Asked what he meant by "jostled," Schenker replied that appellant had gotten behind Glazer and stuck his hand in his pocket.

The evidence showed that appellant was apprehended after a short chase.

The trial judge, in convicting appellant of robbery, found the requisite force to exist because, in his view of the evidence, it showed that appellant had put his hand on

Glazer's back and Glazer felt appellant's hand touch his body as it entered his pocket.

Robbery, a common law crime in Maryland, is larceny from the person accompanied by violence or putting in fear. *Williams v. State*, 7 Md. App. 683; *Halcomb v. State*, 6 Md. App. 32; *Osborne v. State*, 4 Md. App. 57; *Harrison v. State*, 3 Md. App. 148. The violence may be actual as by the application of physical force, or it may be constructive as by intimidation or placing the victim in fear. *Wiggins v. State*, 8 Md. App. 598. Where, as here, it is clear that the victim was neither intimidated or put in fear, there must be evidence of actual violence preceding or accompanying the taking. *See Giles v. State*, 8 Md. App. 721. Actual violence, it is said, implies personal violence; if there is any injury to the person of the owner in the taking of the property, or if he resists the attempt to rob him, and his resistance is overcome, there is sufficient violence to make the taking robbery, however slight the resistance. *Giles v. State, supra; Williams v. State, supra.* The degree of force used is immaterial so long as it is sufficient to compel the victim to part with his property. 46 Am. Jur. *Robbery,* Section 15. In other words, sufficient force must be used to overcome resistance and the mere force that is required to take possession, when there is no resistance, is not enough, *i.e.*, the force must be more than is needed simply to move the property from its original to another position; there must be more force than is required simply to effect the taking and asportation of the property. 2 Wharton's Criminal Law and Procedure (Anderson Edition) Section 555. Thus, it is not robbery to obtain property from the person of another by a mere trick, and without force, or to pick another's pocket without using more force than is necessary to lift the property from the pocket; nor is it robbery to suddenly snatch property from another when there is no resistance and no more force, therefore, than is necessary to the mere act of snatching. Clark and Marshall *Crimes* (6th Edition) Section 12.13; Annotation 8 A.L.R. 359. Conversely, it has been held robbery "for a person to

seize another's watch or purse, and use sufficient force to break a chain or guard by which it is attached to his person, or to run against another, or rudely push him about, for the purpose of diverting his attention and robbing him, and thus take a purse from his pocket." Clark and Marshall *Crimes,* Section 12.13. And as that preeminent text authority further notes in the same Section, the fact that surprise aids the force employed to accomplish the taking will not prevent the force from aggravating the offense, so as to make it robbery, it not mattering that the victim does not know that he is being robbed. Within these rules, it has been held robbery to put an arm around one's neck, ostensibly to whisper to him, and then pick his pocket; or to pick one's pockets while scuffling with him; or while jostling him; or while running against him; or while pushing him; or while crowding and putting one's arms around him. 8 A.L.R. at 360-361.

In the present case, the evidence showed that appellant suddenly thrust his hand into Glazer's pocket and snatched therefrom a number of loose bills, some of which were at least partially exposed to view. The victim did not resist. He was not injured. He was not placed in fear. The force used was that, and only that, necessary to remove the money from the victim's pocket. While the victim testified that appellant "maybe" put his hand on his back, we believe such testimony too speculative to be entitled to any probative value as evidence that the appellant did in fact do so; and the testimony of Schenker that the victim was "jostled" was explained by him to mean only that appellant got behind the victim and put his hand into his pocket.

On these facts, we think the crime was larceny, not robbery. In *People v. Jones,* 125 N. E. 256 (Ill.), the defendant slipped his hand into the victim's hip pocket and took his pocketbook, the victim immediately thereafter protesting the taking. Noting that force was the gist of the offense of robbery, and that the owner's power to retain his property must be overcome by the use of actual violence, or by fear, to constitute robbery, the court con-

cluded that the evidence showed only a taking from the pocket of the victim under circumstances excluding any attempt to use violence (there being no evidence of a struggle by the victim to retain his property). In holding the crime to be larceny rather than robbery, the court relied upon *Hall v. People,* 49 N. E. 495 (Ill.), a case involving similar facts, where it was said (page 496) :

> "* * * The only difference between private stealing from the person of another and robbery lies in the force or intimidation used. In regard to the force or violence with which the goods were taken, the principle is this: that the power of the owner to retain the possession of his goods was overcome by the robber, either by actual violence physically applied, or by putting him in such fear as to overpower his will, as if a thing to be feloniously taken from the person of another with such violence as to occasion a substantial corporal injury, or if it be obtained by a violent struggle with a possessor; but where it appeared that the article was taken without any sensible or material violence to the person, as snatching a hat from the head or a cane or umbrella from the hand of the wearer,—rather by sleight of hand and adroitness than by open violence, and without any struggle on his part, —it is merely larceny from the person. * * * It may be different if the article is so attached to the person or clothing as to create resistance, and violence is used to overcome it. * * * When the force used is to prevent the resistance of or to overpower the person robbed, there such force makes the offense robbery. * * *"

In *State v. Parker,* 170 S. W. 1121 (Mo.), the evidence showed that the defendant boldly put his hand into the victim's pocket while they were conversing and lifted therefrom $2.25 in silver coin, the victim immediately thereafter protesting the taking. Noting that the coins

were lying loose in the victim's pocket, and that no force or violence was employed to separate the victim from his coins, the court held they were "merely stealthily lifted" from the victim's pocket "where they were lying unattached to his person." The court concluded (page 1123-1124) that "(s)uch filching of loose property from the pocket with no more force than is necessary to lift and remove the property from the pocket is not robbery, but larceny."

In *Monaghan v. State,* 134 P. 77 (Okla.), the evidence showed that the victim, in a drunken condition, "was in the closet with his clothes unloosed, and while he was unbuttoning his suspenders, the defendant 'socked' his hand into his pocket"; that defendant then cursed the victim and removed his pocketbook, after which the victim shouted that he had been robbed. Noting that the evidence did not show that the defendant had obtained possession of the pocketbook by force or violence, the court said (page 79) :

> "The snatching a thing is not considered a taking by force, but if there be a struggle to keep it, or any violence, or disruption, the taking is robbery * * *. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance. The mere snatching of an article from the person of another, without violence or putting in fear, is not robbery, except where there is some injury or violence to the person of the owner, or where the property snatched is so attached to the person or clothes of the owner as to afford resistance."

The fact that the victim's money is within his pocket does not, of itself and without more, bring the taking therefrom within the doctrine that where the article stolen is so attached to the person or clothing of the victim that resistance is offered to the taking solely by reason of such attachment. Where, as here, the money was

suddenly snatched from the victim's pocket — no more force being used than that merely necessary to take possession, and there was no actual resistance to the taking—we think the case legally indistinguishable from those involving the conventional pickpocket. That the pickpocket may be more artful and furtive in abstracting his victim's property does not distinguish his act from the less stealthy, less adroit but more bold approach taken by appellant in this case—the aim in both is the same, *viz.*, to enter the pocket of the victim privately and without his knowledge, and thereafter to take posession of his property.

While we thus conclude that the record before us shows a case of larceny, but not robbery, it may be, on retrial, that the State can produce evidence of violence in the taking sufficient to constitute robbery. We think the State should be afforded that opportunity. *See Gray v. State,* 254 Md. 385. We note, further, that the docket entries indicate that on appellant's post-trial motion, the trial judge merged his conviction for larceny into his robbery conviction. Under such circumstances, the vacating of the larceny conviction was not equivalent to a not guilty finding on the larceny count, nor did it operate as an acquittal of that offense. On retrial then, the State may try appellant on the larceny count as well as the robbery charge; and a conviction for larceny, if the robbery is not shown, would not constitute double jeopardy. *See Benton v. Maryland,* 395 U. S. 784.

*Judgment reversed; case remanded for a new trial.*