MICHAEL LAVERNE LYLES *v.* STATE
OF MARYLAND

[No. 587, September Term, 1969.]

*Decided October 5, 1970.*

The cause was submitted to MURPHY, C.J., and ORTH and THOMPSON, JJ.

*John D. Hackett* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *John B: Griffith, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Michael Laverne Lyles was convicted at a court trial in the Criminal Court of Baltimore of assaulting Charles Lecato with intent to rob (1st count of indictment 2998), of assaulting and beating Robert Shirriell (2nd count of indictment 2999), and of resisting his arrest by Shirriell, a Special Officer of Baltimore City (indictment 3000), each of the offenses occurring on 11 April 1969. He contends that the judgment of the lower court as to each conviction was clearly erroneous and must be set aside.

As to indictment 2998 appellant claims that the State adduced no evidence sufficient to establish the assault as a necessary ingredient of assault with intent to rob. See *Bryant v. State,* 4 Md. App. 572, 577. Lecato testified that he was in the credit office on the third floor of Brager-Gutman's Department Store about 3:15 P.M. on 11 April. He had paid his bill and was waiting for his change of over $200. Appellant came "up to the window and the lady came and gave me my change, and he tried to snatch it out of my hands, but I had hold of it rather tight, and snatched back. Then he ran from the credit office." Mrs. Lecato testified that appellant attempted to take the money from her husband. "He grabbed at it with his hands. He had his hand on the money. He had ahold of the money. He was attempting to grab it from his hand.

* * * [A]fter he couldn't get it out of his hands, he ran * * *." We said in *Williams v. State,* 4 Md. App. 643, 647 that any attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention. It is not necessary that there should be a specific purpose to do a particular injury; general malevolence or recklessness is sufficient. Here it is clear that by grabbing the money held fast in Lecato's hand appellant attempted to apply force to Lecato's person and assaulted him. We note further that actual violence is present in the crime of robbery if the victim resists the attempt to rob him, however slight the resistance. Actual violence may be equated to a battery and a battery includes an assault. See Clark and Marshall, *Law of Crimes,* 6th Ed. § 12.13, pp. 787-789; § 12.14, pp. 789-793; *Douglas v. State,* 9 Md. App. 647. We hold that the evidence in law was sufficient to establish assault with intent to rob.

As to indictment 2999 appellant claims he was placed in a position *se defendendo* and legally met force with equal force. Shirriell testified that he was on the first floor of the store when he saw Mr. and Mrs. Lecato enter and get on the escalator. Three boys came in behind them and followed them on the escalator. Shirriell followed them to the third floor. The boys were standing in the door to the credit office "and started moving around. * * * Then I was standing watching the counter by the cash register, and everybody started hollering, and all three came up. One went down the up escalator and the other went out the front steps, and Lyles came running toward the escalator and ran into me. * * * We got to tussling on the floor and wrestling. Then I got him with the back end of the nightstick, and another fellow held him. He broke loose on him and grabbed the stick, and swung at him. When I push him away, he bumped me

on the side of the head [with] my own nightstick * * * It was a glancing blow. * * * I finally got the handcuffs on him and took him down on the elevator * * * and then held him until the city took over." This testimony was sufficient to show an assault and battery on Shirriell by appellant. See *Price v. State,* 227 Md. 28; *Halcomb v. State,* 6 Md. App. 32. Not even appellant's testimony established what he now urges. He said he was standing in line behind Lecato to get a check cashed. He was shoved and fell into Lecato "and the next thing he snatched back and then looked at me and said I was trying to take his money. Everybody started hollering, and I ran out the front, and I ran into the police. I was trying to tell him about the boys getting away and all, three of the boys got on the elevators while I was trying to tell him. I got mad, and we got to wrestling up there. Some other man, I don't know who he was, he wasn't a policeman or nothing, he grabbed me and I grabbed the nightstick." We find that the court was not clearly erroneous in its judgment that appellant assaulted and beat Shirriell.

Indictment 3000 charged the common law offense of resisting arrest. See *Preston v. Warden,* 225 Md. 628; Perkins, *Criminal Law,* 2nd Ed., pp. 494-496; 4 Wharton's *Criminal Procedure* (Anderson) § 1617. It did so by alleging that Shirriell was a "Special Officer" of the City of Baltimore, that he was in the lawful discharge of his duties in arresting appellant for attempted robbery and that appellant resisted the arrest by "pulling, beating and laying hold of the said Officer." When called to testify Shirriell said he worked for "the Baltimore City Detective Bureau. * * * I was assigned to Brager-Gutman's." On 11 April 1969 he was "on duty there as a special officer." He said that when he apprehended appellant he informed appellant that he was under arrest and told appellant who he was, but the details of what Shirriell told appellant were not elicited. On cross-examination it was brought out that Shirriell had left Brager-Gutman's about two weeks after the incident and at the time of the trial

was working for Metal Masters of Baltimore City. He was doing "security work" only "now and then."

At the time of appellant's arrest the public general law codified as Art. 23, §§ 342-348 provided for the appointment of persons by the Governor to act as policemen for the protection of the property of corporations maintaining a mercantile establishment in this State. Sections 342, 343-348. Persons so commissioned possessed and exercised all the authority and powers held and exercised by constables at common law and under statute of this State and also all the authority and powers conferred by law on policemen in the City of Baltimore. Section 344.[1] In addition, a public local law, Ch. 203, § 541, Acts 1966, codified as § 16-16, Code of Public Local Laws of Baltimore City, Everstine, 1969, provided for the appointment of special police officers by the Police Commissioner of Baltimore City upon application by any corporation, association, firm or person in the City of Baltimore. Every special police officer so appointed has the power, upon the premises of the entity which applied for his appointment, "to preserve the public peace, prevent crime, arrest offenders, protect the rights and property in and upon such premises as fully as a regular police officer of Baltimore City."

Shirriell was not alleged to be a member of the Police Department of Baltimore City and it is clear from the evidence adduced that he was not. See Code of Public Local Laws of Baltimore City, supra, §§ 16-7 (7) and 16-10. But it is not clear from the evidence exactly what he was. The *allegata* required proof that he was "a Special Officer" of the City of Baltimore. The sufficiency of this allegation was not attacked below nor is it questioned on appeal, but in any event to have the power to arrest as a police officer appellant would either have to have been ap-

1. Art. 23, §§ 342-348 and Art. 41, §§ 60-70, subtitle "Special Policemen" were repealed by Ch. 581, Acts 1969, effective 1 July 1969 and new §§ 60-70 of Art. 41 were enacted in lieu thereof. Former Art. 41, §§ 60-70 provided for the appointment of special policemen by the Governor of this State upon application of the governor of another state owing or having an interest in property in Maryland. The new §§ 60-70 of Art. 41 encompass in substance the former provisions of the repealed sections of both Art. 23 and Art. 41.

pointed by the Governor and have qualified under the provisions of Md. Code, Art. 23, §§ 342-348 or have been appointed by the Police Commissioner of Baltimore City and in good standing in accordance with the provisions of Baltimore City Code, § 16-16. The only evidence of his status was his testimony that he was "working for the Baltimore City Detective Bureau", assigned to Brager-Gutman's, and was on duty there as "a special officer." We do not believe that this was sufficient to meet the State's burden of establishing beyond a reasonable doubt that at the time of the arrest Shirriell was a police officer. And, of course, if he was not, the arrest would not have been in the lawful discharge of his duty as a police officer and the resistance thereto would not have been unlawful as alleged.[2] We think that the State had to prove beyond a reasonable doubt that Shirriell had been commissioned by the Governor as a police officer under the public general law and that his commission was in effect at the time of the arrest or that he had been appointed a special officer by the Police Commissioner of Baltimore City under the public local law and that the appointment had not been revoked at the time of the arrest. We find that the State did not do so. We hold that the evidence in law was not sufficient to support the conviction under indictment 3000.

Under the rule enunciated in *Gray v. State,* 254 Md. 385, 397 the State may retry appellant for the offense of resisting arrest if it can satisfy the lower court within a time to be specified forthwith by said court that additional probative evidence to overcome the deficiency can be produced. We therefore vacate the judgment under indictment 3000 and remand the case with direction to the lower court to hold a new trial if the State so desires and satisfies the court that it can produce additional probative evidence to overcome the deficiency or to enter a judgment of acquittal if the State does not desire to re-

2. Only the common law offense was charged. There was no count under Md. Code, Art. 27, § 11 B. We note that this section was repealed effective 1 July 1969 by Ch. 655, Acts 1969.

try appellant or is unable preliminarily so to satisfy the court as to additional evidence.

> *As to indictments nos. 2998 and 2999:*
> *judgments affirmed.*
> *As to indictment no. 3000: judgment vacated; case remanded for further proceedings in accordance with this opinion.*