## JESSIE GREGORY RAIFORD v. STATE OF MARYLAND

[No. 1530, September Term, 1981.]

*Decided July 13, 1982.*

The cause was submitted on briefs to Liss and Wilner, JJ., and George W. Bowling, Associate Judge of the Seventh Judicial Circuit, specially assigned.

Submitted by *Arthur A. Delano, Jr., Assistant Public Defender,* and *Alan H. Murrell, Public Defender,* for appellant.

Submitted by *William C. Rogers, III, Assistant Attorney General, Stephen H. Sachs, Attorney General, William A. Swisher, States's Attorney for Baltimore City,* and *Charles Chiaparelli, Assistant State's Attorney for Baltimore City,* for appellee.

WILNER, J., delivered the opinion of the Court.

At approximately 1:45 p.m. on November 16, 1980, as Louise Whitney was preparing to get into her car in the 2200 block of Lake Avenue in Baltimore City, she "felt something on [her] left shoulder." Turning around, she saw that a black male "standing there" had "ripped [her] shoulder strap bag off [her] shoulder." The assailant, who was tall and slender, had short hair and a mustache, and wore a brown jacket and dark trousers, then fled, with the purse, across the lawn of the nearby Saint Matthew's Church. According to Miss Whitney, the contents of her purse included, among other things, one five-dollar bill, five one-dollar bills, and change.

Alerted by screams, James Brandau and Fran Lane, who were approximately one block away, saw a black male running across the Saint Matthew's Church lawn clutching something under his arm. The individual, who was described as being a tall black male with dark slacks and a brown jacket, fled the area in a dark Pontiac Gran Prix bearing the license number ERD-208.

At approximately 1:46 p.m., while on patrol in the vicinty of Sinclair Lane, Officer Charles Smoot of the Baltimore City Police Department received a radio call reporting the incident in question and giving a description of the suspect and his car. Responding to "the Clairmont area," where he recalled having seen "a similar tag number" some time before, the officer soon observed a black vehicle "coming from Federal Street, up Freedom Way" at a high rate of speed. Watching as the vehicle entered a parking area on Freedom Way West, Officer Smoot ascertained that the car was a 1976 Pontiac bearing license plate number ERD-208. The driver, who was then apprehended, was described as a

black male, "twenty-five to thirty years of age, wearing a brown coat, blue pants." Found in his right coat pocket was a five-dollar bill, five one-dollar bills, and $1.90 worth of change.

A short time later, Brandau and Lane arrived at Officer Smoot's location (some three to four miles from the scene of the robbery), where they identified the person held by the officer as being the same individual they had seen fleeing the scene of the robbery a short time before. At trial, Officer Smoot identified appellant, Jessie Raiford, as the person he had apprehended.

On March 21, 1981, Officer Wayne McClone of the Baltimore City Police Department recovered Miss Whitney's purse from a gully located on Federal Street, approximately fifty feet from Freedom Way.

On April 15-16, 1981, appellant was tried in the Criminal Court of Baltimore on a five-count criminal information charging him, *inter alia,* with robbery. Because appellant had previously been convicted of "crimes of violence" on two prior separate occasions, the State sought imposition of a mandatory twenty-five year term of imprisonment pursuant to Md. Code art. 27, § 643B (c).[1] From his conviction, and sentence in accordance with § 643B (c), appellant appeals, arguing:

---

1. Section 643B (c) provides:

"Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11."

The imposition of a mandatory sentence was based upon two prior robbery convictions, for which appellant was sentenced to concurrent three-year terms of imprisonment on December 1, 1967, and one prior rape conviction, for which he was sentenced to a twenty-year term of imprisonment on June 11, 1970. Appellant does not contest the fact that robbery and rape are both crimes of violence. *See* art. 27, § 643B (a).

"I. The trial court erred in imposing a mandatory sentence under the provisions of Article 27, § 643B (c).

II. The evidence was insufficient to sustain appellant's, conviction."

We find no error and shall thus affirm the judgment of the court below.

I.

On August 6, 1970, the United States District Court for the District of Maryland held unconstitutional the Maryland Juvenile Causes Act, Md. Code art. 26, § 51, *et seq.,* insofar as it exempted Baltimore City from the otherwise uniform juvenile age requirement of eighteen years. *See Long v. Robinson,* 316 F. Supp. 22 (1970 D.Md.), *aff'd* 436 F.2d 1116 (4th Cir. 1971). The effect of this holding, which also declared unconstitutional a Baltimore City Public Local Law fixing the juvenile age requirement there at sixteen, was to end the practice of automatically trying sixteen- and seventeen-year olds as adults in Baltimore City. Pointing to the fact that his twenty-five year mandatory sentence in the present case is partially based upon two robbery convictions obtained pursuant to this statutory scheme in Baltimore City when he was seventeen, appellant argues that the court improperly imposed a mandatory sentence pursuant to § 643B (c) because his prior robbery convictions "cannot be considered as proper predicates for the imposition of a mandatory sentence under § 643B (c)." In making this argument, appellant recognizes that *Long* does not have retroactive effect in Maryland (*see Wiggins v. State,* 275 Md. 689 (1975)), and that, as a consequence, his convictions are not a "nullity." *Compare Woodall v. Pettibone,* 465 F.2d 49 (4th Cir., 1972), *cert. denied,* 413 U.S. 922. Nevertheless, he continues, "[p]rospective use of 'adult' convictions from the Criminal Court of Baltimore . . . would perpetuate indefinitely the effect of th[at] arbitrary exception."

We disagree, on the basis of both the holding and the reasoning in *Wiggins.*

*Wiggins* was a declaratory judgment proceeding. Mr. Wiggins had been charged with six counts of burglary occurring while he was between sixteen and eighteen years of age. The cases came to trial in Baltimore City in 1960 and 1961 — prior to *Long v. Robinson;* and, in accordance with the statutory law then in effect, he was tried, and convicted, in the Criminal Court of Baltimore rather than in the Juvenile Court. Arguing that the Federal decision was retroactive, Wiggins sought a declaration that "the aforementioned convictions . . . are a nullity and that [he] may suffer no legal disabilities as a result of such convictions," (*see* 275 Md. at 692) emphasis supplied), and an order expunging all records of those convictions. The trial court dismissed the bill on motion and demurrer, and, on appeal, this Court and the Court of Appeals affirmed.

In rejecting summarily the broad relief requested by Wiggins, the Court, it seems to us, made a clear statement that *Long* is to have absolutely no effect upon either the prior convictions themselves or upon collateral consequences (such as the application of recidivist statutes) flowing from them.

As compelling as the holding in *Wiggins* is the reasoning behind it. The mere fact that the general process by which a conviction was obtained is later, in another case, found to be constitutionally flawed in some way does not necessarily taint the otherwise valid conviction. It depends on the nature of the defect, primarily whether that defect touches the integrity of the fact-finding process that led to the conviction. The heart of the *Wiggins* decision was expressed thusly for the Court by Judge Smith (275 Md. at 709):

> "The same evidence presented in a juvenile proceeding or in a regular criminal trial should lead to the same conclusion, although, as we shall point out, at the time of Wiggins' trials his rights might have been more jealously guarded constitutionally

in a regular criminal trial than in a trial under juvenile procedure. The basic difference, however, between trial as an adult and trial as a juvenile lies not in the fact-finding processes, but in the procedures looking to rehabilitation after a determination that an individual did in fact commit acts which were violations of the criminal statutes of this State."

The same type of reasoning has led the United States District Court for the District of Maryland and, on appeal, the Fourth Circuit Court of Appeals, to somewhat analogous results. *See, for example, Douglas v. Warden, Maryland Penitentiary,* 399 F.Supp. 1 (D. Md., 1975) and *Grandison v. Warden, Maryland House of Correction,* 580 F.2d 1231 (4th Cir. 1978), *cert. denied,* 440 U.S. 918 (1979), where the courts, in Federal habeas corpus proceedings, concluded that criminal convictions obtained in Baltimore City against a youth between 16 and 18 years of age, prior to *Long v. Robinson,* could be used to impeach that defendant's credibility in subsequent criminal proceedings. Those decisions also rested on the premise that the defect struck down in *Long v. Robinson* did not impugn the fact-finding process. Distinguishing cases involving convictions obtained in the absence of counsel and thus offending *Gideon v. Wainwright,* 372 U.S. 335 (1963) — *see, for example, Burgett v. Texas,* 389 U.S. 109 (1967) and *Loper v. Beto,* 405 U.S. 473 (1972) — both the *Douglas* and *Grandison* Courts noted:

"The latter [convictions which offend *Gideon*] are improper *per se,* while the former [convictions which offend *Long*] are improper only if and when other procedures are deemed to have been permitted to some, and denied to other, defendants who otherwise are alike. Accordingly, there is nothing inherently wrong with convictions which offend *Long. On their own* they do not violate any right of a defendant. (Emphasis in original)"

*Grandison, supra,* 580 F.2d at 1239-40, quoting *Douglas, supra,* 399 F.Supp. at 9.

If these convictions, valid when entered, are *not* subject to expungement, *do* subject the defendant to "legal disabilities as a result of [them]," and *may* be used for impeachment purposes, we see no reason why they should be regarded as less than valid and viable convictions for purposes of the mandatory sentence provisions of art. 27, § 643B (c).

## II.

Citing *Cooper v. State,* 9 Md. App. 478 (1970), appellant submits that "the snatching of [Miss] Whitney's purse" was not accompanied by sufficient force to constitute robbery. Rather, he argues, "the crime, if any was larceny" because "the only 'force' used was the minimum required to obtain possession." We disagree.

Robbery is larceny from the person accompanied by violence or putting the victim in fear. Where the victim is neither intimidated nor put in fear, the taking must be accompanied or preceded by actual violence directed at the victim. Actual violence includes both injury to the person and the overcoming of any resistance offered by the victim. Moreover, "[t]he degree of force used is immaterial so long as it is sufficient to compel the victim to part with his property . . . . In other words, sufficient force must be used to overcome resistance and the mere force that is required to take possession, when there is no resistance, is not enough." *Id.* at 480.

Resistance, however, need not emanate entirely from the victim. Rather, "where the article stolen is so attached to the person or clothing of the victim that resistance is offered to the taking solely by reason of such attachment," then the act of merely snatching property from another is considered robbery as well. *Id.* at 483.

Turning to the facts of the present case, we believe that the record amply supports a finding that Miss Whitney's

purse was forcibly taken. The fact that her "shoulder strap" was "ripped" from her arm clearly shows that the purse was so attached to her person as to afford resistance to the taking.

Pointing to the fact that he was never positively identified at trial as the individual who robbed Miss Whitney of her purse, appellant also argues that there was insufficient evidence to establish his criminal agency. Again, we must disagree.

When apprehended, appellant (1) fit the description of Miss Whitney's assailant, (2) carried cash in the same amount *and* denomination as that contained in the victim's purse, and (3) was exiting a car seen fleeing the area of the robbery a short time before. Moreover, appellant was also identified by two witnesses as being the individual who, just after the robbery, was seen running across the church lawn clutching something. These circumstances, combined with the fact that the stolen purse was later found a short distance from the scene of his capture, plainly and sufficiently sufficed to connect appellant with the events in question.

> *Judgment affirmed; appellant to*
> *pay the costs.*