30 A.3d 891

**Erick Leroy SPENCER**

v.

**STATE of Maryland.**

**No. 87, Sept. Term, 2009.**

Court of Appeals of Maryland.

Oct. 25, 2011.

424

Juan P. Reyes, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Michelle W. Cole, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, GREENE, * MURPHY, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

JOHN C. ELDRIDGE (Retired, Specially Assigned), J.

Petitioner Erick Leroy Spencer was charged and convicted of robbery, theft over $500, and second degree assault. Spencer was sentenced to imprisonment for robbery, and, for purposes of sentencing, the other two convictions were merged. On appeal, he has challenged the sufficiency of the evidence to sustain his robbery conviction. The State in this case presented evidence showing that Spencer entered an automobile service center and stated to the cashier: "Don't say nothing." We shall hold, however, that the State failed to prove an essential element of the crime of robbery. There was no evidence that Spencer conducted himself in a manner that could cause apprehension in a reasonable person that the petitioner was about to apply force. When the State fails to produce any evidence of one of the elements of the offense charged, the conviction cannot stand. Accordingly, we shall reverse the robbery conviction.

## I.

The facts in this case are uncontested. On December 26, 2006, at around 3:20 in the afternoon, Spencer entered the Jiffy Lube automobile service center located on Baltimore National Pike. He walked up to the cashier, a man named Tyrone Stinnette, and stated: "Don't say nothing." At Spencer's trial before the Circuit Court for Baltimore County, Mr. Stinnette testified as follows:

> State's Attorney: "[D]o you recall something out of the ordinary occurring during that day?
>
> Stinnette: "Yeah. We got robbed.
>
> State's Attorney: "When you say 'you got robbed,' explain where you were and what exactly in your mind you saw happen?
>
> Stinnette: "I was ringing up customers and got robbed.
>
> State's Attorney: "Again you said you were robbed. What was done? When you say 'robbed,' explain what you mean by 'robbed'?
>
> Stinnette: "Money was took.

State's Attorney: "How was it taken from you? Were you working the register?

Stinnette: "Yes."

\* \* \*

State's Attorney: "What did Mr. Spencer say or do when he walked up to you?

Stinnette: "He said, 'Don't say nothing.' Once he say that, I knew what was going on.

State's Attorney: "Did he point anything at you or imply anything?

Stinnette: "No.

State's Attorney: "Did you believe he had a weapon at that time?

Stinnette: "I wasn't taking no chances.

State's Attorney: "You said you weren't taking no chances. What did you do when he said that?

Stinnette: "I handed him the cash register drawer."

Stinnette testified that after he handed the cash register drawer to Spencer, Spencer "just left." Stinnette also testified that another man had accompanied Spencer into the shop and that the other man simply "sat in the lounge" and left after Stinnette had handed the cash register drawer to Spencer. Stinnette did not call the police and, when asked by the State's Attorney if he attempted to "persuade the individual, chase him or anything," Stinnette replied that he did not. Stinnette's testimony concluded with the following exchange:

State's Attorney: "Mr. Stinnette, after the individual left the location, can you explain to Judge Daniels how you felt when you first came in that day? How did you feel when he did that to you, when he approached the counter?

Stinnette: "Like I said, I wasn't taking no chances."

The record does not include any description of the Spencer's clothing on the day of the incident, and the only physical description of the petitioner included in the record is Stin-

nette's recollection that the petitioner was "five nine" and "had a tear drop [tattoo] underneath his eye."

As earlier mentioned, Spencer was charged with robbery, theft over $500, and second degree assault. After the nonjury trial, he was found guilty of robbery and the theft and assault convictions were, for the purposes of sentencing, merged with the robbery conviction. Although the robbery statute provides that the penalty shall not exceed 15 years, Spencer was sentenced to 25 years without parole as a subsequent violent offender with two previous robbery convictions. *See* Maryland Code (2002, 2011 Supp.), § 14–101(d) of the Criminal Law Article.

Spencer appealed to the Court of Special Appeals, arguing that the evidence at trial was insufficient to support his robbery conviction. He specifically claimed that the record did not show any evidence of force or a threat of force during his exchange with the cashier, a crucial component of a robbery charge. In an unreported opinion, the Court of Special Appeals affirmed Spencer's robbery conviction, stating that the "fact finder had before it sufficient evidence upon which it could reasonably conclude that the constructive force element of robbery was satisfied because the governing objective standard does not require a showing of actual fear, nor is the actual display of a weapon necessary."

Spencer petitioned this Court for a writ of certiorari, which was granted. *Spencer v. State,* 410 Md. 559, 979 A.2d 707 (2009). In his petition, Spencer again challenged the sufficiency of the evidence to sustain his robbery conviction.[1]

---

1. The question posed in the certiorari petition specifically asks:

"Did the Court of Special Appeals incorrectly interpret and apply this Court's decision in *Coles v. State,* 374 Md. 114, 821 A.2d 389 (2003) and effectively eliminate the distinction between theft and robbery, when it held that the mere utterance, 'don't say nothing,' could satisfy the constructive force element of robbery where there was testimonial evidence from the alleged victim confirming the lack of any actual or implied threat of bodily harm; there was no brandishing of a weapon; and there existed no circumstances under which it could be inferred that Petitioner was carrying a weapon?"

While the Court of Special Appeals correctly stated the principle that the constructive force element of robbery may be satisfied without a showing of actual fear, that court failed to acknowledge that a review of the evidence in this case makes it clear that the State failed to produce any evidence showing that the petitioner conducted himself in a way that a reasonable person would construe as creating the apprehension that force was threatened. Without evidence to this effect, the State did not prove all elements of the robbery charge.

## II.

Robbery in Maryland is governed by a common law standard. Maryland Code (2002, 2011 Supp.), § 3–401(e) of the Criminal Law Article, provides that " '[r]obbery' retains its judicially determined meaning." From its earliest days in Maryland law, fear has been a central component in distinguishing the crime of larceny or theft from robbery. A 1724 English treatise, quoted by Chief Judge Murphy in *West v. State,* 312 Md. 197, 203, 539 A.2d 231, 233 (1988), stated:

> "Larceny from the Person of a Man either puts him in Fear, and then it is called Robbery; or does not put him in Fear, and then it is called barely, Larceny from the Person."
> William Hawkins, *Treatise of the Pleas of the Crown.*

The treatise continued to explain that "[r]obbery is a felonious and violent Taking away from the Person of another, Goods or Money to any Value, putting him in Fear." *Ibid.*

An early Maryland treatise, John Latrobe, *Justice's Practice under the Laws of Maryland* (1826) likewise noted:

> "Open and violent larceny from the person, or *robbery,* is the felonious and forcible taking from the person of another, of goods or money to any value, by violence, or putting him in fear. The putting in fear distinguishes it from other larcenies. 4 *Blac. Comm.* 242."(Quoted in *West v. State, supra,* 312 Md. at 203, 539 A.2d at 233–234.)

More recently, this Court commented that: "The hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to

as intimidation." *Coles v. State*, 374 Md. 114, 123, 821 A.2d 389, 395 (2003).

In *West v. State, supra*, 312 Md. at 203, 539 A.2d at 234, the Court encountered the "question of the degree of violence or putting in fear that is requisite" to distinguish a theft, or larceny, from a robbery. In *West*, the defendant snatched a woman's purse. The woman later testified at the defendant's trial that "just [as he] snatched my purse from my hand and he ran, that's when I noticed my pocketbook was gone...." 312 Md. at 199, 539 A.2d at 232. West was convicted of robbery, and, in this Court, he challenged the conviction, arguing that the evidence was insufficient to support the robbery conviction because the purse snatching "was not accompanied by sufficient force to constitute robbery." 312 Md. at 201, 539 A.2d at 233. The *West* Court overturned the robbery conviction for insufficient evidence, highlighting the fact that the record demonstrated that the victim in *West* was "never placed in fear; she did not resist; she was not injured." 312 Md. at 206, 539 A.2d at 235.

In so holding, the Court in *West*, 312 Md. at 203, 539 A.2d at 233, traced the "ancient origins" of common law robbery, closely examining the "requirement that the larceny be accompanied by violence or putting in fear" to constitute robbery. We discussed several English cases where courts had refused to uphold robbery convictions when the incidents involved only snatching items from victims without force or threat of force. *See The King v. Macauley*, 168 Eng. Rep. 246 (1783); *The King v. Baker*, 168 Eng. Rep. 247 (1783); *see also Steward's Case*, 168 Eng. Rep. 247–248, discussed in n. 3 (1690).

The *West* Court also examined cases in the Court of Special Appeals with facts that mirrored the situation in *West*. *See Raiford v. State*, 52 Md.App. 163, 447 A.2d 496 (1982); *Cooper v. State*, 9 Md.App. 478, 265 A.2d 569 (1970); *Williams v. State*, 7 Md.App. 683, 256 A.2d 776 (1969). The Court in *West* relied particularly on *Cooper v. State, supra*, 9 Md.App. 478, 265 A.2d 569, a case in which a conviction of robbery was overturned when the defendant reached into another man's

pocket, "startled" him, and took his wallet. The *Cooper* opinion set forth the applicable law:

"Where, as here, it is clear that the victim was neither intimidated [n]or put in fear, there must be evidence of actual violence preceding or accompanying the taking. * * *[T]he mere force that is required to take possession, when there is no resistance, is not enough, *i.e.,* the force must be more than is needed simply to move the property from its original to another position; there must be more force than is required simply to effect the taking and asportation of the property. Thus, it is not robbery to obtain property from the person of another by a mere trick, and without force ... nor is it robbery to suddenly snatch property from another when there is no resistance and no more force, therefore, than is necessary to the mere act of snatching." (9 Md.App. at 480, 265 A.2d at 571, citations omitted).

The Court in *West* declined to accept the State's position that the common law distinction between robbery and larceny should be more flexible, stating (312 Md. at 207, 539 A.2d at 235):

"The State contends that recent cases ... manifest an evolutionary trend away from common law distinctions between robbery and larceny, toward a more flexible inquiry into the magnitude of the risk posed by the defendant's conduct. We are urged to adopt this approach but are not persuaded to do so. If flexibility is a virtue, so too is certainty, and, in light of the pertinent cases reaching back at least to 1690, we think certainty is promoted by drawing the line between robbery and larceny where we have drawn it."

This Court earlier addressed the distinction between larceny and robbery in *Dixon v. State,* 302 Md. 447, 488 A.2d 962 (1985). In *Dixon,* the Court summarized the facts as such:

"[T]he defendant with a 'cold, hard look' in his eyes approached the cashier with a previously written demand for all her money, in the night, at a time when she was alone in

the filling station and carrying a newspaper tightly under his arm, folded in such a way that the cashier 'thought it was a weapon inside the newspaper, that he kept still, pointed right towards [her].' [When given a note stating, 'I want all your money and hurry,' s]he dropped to the floor of her booth and pressed the alarm button and the defendant fled." 302 Md. at 464, 488 A.2d at 970.

Dixon was charged and convicted of assault with intent to rob, but he challenged the conviction, claiming that "the evidence did not establish all elements of the offense charged." 302 Md. at 450, 488 A.2d at 963. The majority opinion of the Court of Appeals held that the State had met its evidentiary burden to prove an intent to rob. In particular, the Court noted that

"[t]he testimony of the cashier, the attitude of the accused, the demanding note, and the reasonable inferences deducible therefrom were found by the trial court to show an intent to rob. We cannot say that its conclusion was clearly erroneous." 302 Md. at 455, 488 A.2d at 966.

With regard to the assault element of the crime, the Court in *Dixon* commented that Judge Orth in *Lyles v. State*, 10 Md.App. 265, 267, 269 A.2d 178, 179 (1970), had earlier articulated the test to be applied when intimidation, or putting in fear, is the gravamen of the action:

"[A]ny attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention."

The Court adopted the *Lyles* test, and also cited with approval several federal cases involving the distinction between theft and robbery. One case in particular, *United States v. Alsop*, 479 F.2d 65, 67 n. 4 (9th Cir.1973), was quoted extensively by the *Dixon* Court as follows:

"The determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions. That test requires the application of the standard of the ordinary man. Therefore, to obviate any future alleged difficulty, we suggest the definition of intimidation should be modified. It could read, for example: To take, or attempt to take, 'by intimidation' means wilfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm. *See United States v. Roustio,* 455 F.2d 366, 371–372 (7th Cir. 1972); *United States v. Thomas,* 455 F.2d 320, 322 (6th Cir.1972); *United States v. DePalma,* 414 F.2d 394, 396 (9th Cir.1969), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970)."

All of the other federal cases cited involved bank robberies and all, with the exception of one, included specific demands for money.

The Court next had the opportunity to address the requirement of intimidation or threat of force in *Coles v. State, supra,* 374 Md. 114, 821 A.2d 389. In *Coles,* the defendant, on three separate occasions, entered a bank and handed the teller a note demanding money. During the first robbery, Coles handed the bank teller a note directing her to " '[p]ut some money in the bag.' " The note also ordered her " 'not to hit an alarm, not to let anybody know,' and to return the note." When the teller told Coles she had dropped the note, Coles warned her that she had " 'better find it.' " The note given to the teller in the second robbery likewise commanded that the teller " '[p]ut the money in the bag, no bait money, and no one will get hurt.' " In the final robbery, the note ordered the teller to " '[p]ut all the money in the bag no alarms thank you.' "

For each incident, he was charged with and convicted of robbery. Coles challenged the robbery convictions, claiming that there was insufficient evidence to sustain them because the evidence against him showed only that he presented a note demanding money; no other threatening conduct had been proven. A majority of this Court upheld the convictions,

citing the "test" announced in *Dixon* that allowed an assault conviction to be upheld when there is evidence demonstrating that the perpetrator engaged in "conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply . . . force to him." *Coles*, 374 Md. at 126, 821 A.2d at 396. The *Coles* Court, like *Dixon* before it, cautioned that this test was controlled by an objective standard that should take into account " 'if the means employed are calculated to instill fear in the heart or mind of a reasonable man.' " *Coles*, 374 Md. at 127 n. 10, 821 A.2d at 397 n. 10, *quoting Dixon*, 302 Md. at 461 n. 8, 488 A.2d at 969 n. 8.

The petitioner in *Coles* attempted to distinguish the circumstances of his case from the facts present in *Dixon* by pointing out that he did nothing to imply that he possessed a weapon or that he was prepared to use force. He also argued that the daylight hours and the presence of others in the bank were factors that made his behavior " 'less menacing' " than the conduct in *Dixon*. The Court, however, determined that the evidence in the *Coles* case was "more than sufficient to satisfy the element of intimidation under Maryland law." 374 Md. at 129, 821 A.2d at 398. In particular, the Court noted that the clothing Coles wore "could have easily concealed a weapon," that he gave the teller a "note constitut[ing] an unequivocal demand for money and an intimidating command not to let anyone know that [he] was stealing the money," and that, during one of the robberies, his note stating " 'no one will get hurt' " was "sufficient to suggest bodily harm for non-compliance." 374 Md. at 129–130, 821 A.2d at 398–399.

### III.

In determining whether the evidence in the present case was legally sufficient to sustain the petitioner's conviction for robbery, this Court must examine the record developed in the trial court to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Tarray v. State*, 410 Md. 594, 607–608, 979 A.2d 729, 736–737 (2009); *McKenzie v. State*, 407 Md. 120, 136, 962 A.2d 998, 1007 (2008); *Schlamp v. State*, 390 Md. 724,

728–729, 891 A.2d 327, 330 (2006). Due regard is given to the factual findings of the trial court, and this Court will not re-weigh the evidence. *State v. Suddith,* 379 Md. 425, 429–430, 842 A.2d 716, 718–719 (2004); *State v. Smith,* 374 Md. 527, 533–534, 823 A.2d 664, 668 (2003). This Court will consider "whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *White v. State,* 363 Md. 150, 162, 767 A.2d 855, 861–862 (2001). *See also State v. Suddith, supra,* 379 Md. at 429–430, 842 A.2d at 718–719; *State v. Smith, supra,* 374 Md. at 533–534, 823 A.2d at 668. In short, the question "is not whether we *might* have reached a different conclusion from that of the trial court, but whether the trial court had before it sufficient evidence upon which it could fairly be convinced beyond a reasonable doubt of the defen-dant's guilt of the offense charged...." *Dixon, supra,* 302 Md. at 455, 488 A.2d at 965 (internal quotation marks omitted).

 Importantly, this Court has also emphasized that when considering whether there has been a threat of force or intimidation, an objective test must be employed. This test should consider whether an ordinary, reasonable person under the circumstances would have been in fear of bodily harm. As an earlier Maryland case succinctly put it, it need not be proven that "the person assailed was actually put in fear, if the means employed are calculated to instill fear in the heart or mind of a reasonable man." *Hayes v. State,* 211 Md. 111, 116, 126 A.2d 576, 578 (1956). This was the test utilized in our previous opinions and to which we adhere in the present case.

 After reviewing the record in this case in the light most favorable to the State, we cannot conclude that a rational trier of fact could have found that the State proved all the essential elements of robbery beyond a reasonable doubt. Common law robbery has a long history of requiring the State to prove either the use of force or the threat of force in order to distinguish robbery from the lesser offense of larceny, or theft. We cannot agree with the courts below that merely

uttering the words, "Don't say nothing," without anything more, would intimidate a reasonable person or be viewed by a reasonable person as a threat of harm. To uphold a robbery conviction in this case would effectively abolish the line drawn between theft and robbery. As this Court previously stated in *West, supra,* 312 Md. at 207, 539 A.2d at 235, we refuse to erase the common law distinction between robbery and larceny which reaches back to at least the 1690s.

The threat of force or intimidation, which has been present in all of the cases where this Court has upheld robbery convictions, is simply absent in this case. In *Dixon, supra,* 302 Md. at 464, 488 A.2d at 970, the defendant approached the cashier with a " 'cold, hard look' " in his eyes, wielded a newspaper folded under his arm which could have hidden a weapon, and handed the cashier a written demand for money. In *Coles,* the defendant handed a note to each of the bank tellers clearly demanding money, made intimidating threats for noncompliance, and wore clothes which testimony indicated might have concealed a weapon.

The factors that persuaded the Court in *Dixon* and *Coles* to uphold the robbery convictions are lacking here. Spencer never made a demand for money. In both *Dixon* and *Coles,* the defendants handed notes demanding money to the victims. It made no difference whether the notes actually threatened bodily harm; there was an implicit threat attached to the act of demanding money in the context of those cases. The notes in both cases constituted conduct that would intimidate a reasonable person. Here, however, no note was handed to the cashier, no demand for money was made, and no reference to money or the cash register was made by the petitioner. Even when the cashier was asked by the State if the petitioner pointed anything at him or implied anything during their interaction, the cashier responded "no."

The threat of a weapon also figured prominently in the Court's decisions to uphold the robbery convictions in *Dixon* and *Coles.* Although no weapon was actually brandished in either of those cases, testimony showed that the defendants'

conduct and appearance was such that a weapon may well have been concealed. In *Dixon,* the folded newspaper carried tightly under the defendant's arm could have led a reasonable person to believe that a gun was hidden there. In *Coles,* there was testimony that the defendant's attire might have concealed a weapon. Absolutely no evidence in this case suggests that Spencer possessed a concealed weapon during his encounter with the cashier. There was no testimony regarding his dress and, when the cashier was asked whether he thought the defendant had had a weapon, he responded, "I wasn't taking no chances." This self-reflective answer, which conveys the subjective state of mind of the cashier, does not support an inference that Spencer might have had a weapon. A reasonable person in these circumstances, even one who was not taking any chances, would not have assumed that Spencer possessed a weapon simply because he said "don't say nothing."

The only thing said by the defendant in this case was the statement by Spencer not to say anything. This brief statement, by itself, would not cause an ordinary, reasonable person to have felt apprehension that Spencer was about to apply force. A reasonable person in the cashier's shoes on the day that Spencer entered the Jiffy Lube service center, when faced with the statement not to say anything, would not automatically hand over the cash register drawer. A reasonable person would have likely queried what Spencer wanted or what he meant when he said, "Don't say nothing." The statement to remain silent was simply not enough to create apprehension that force was about to be applied. To intimidate or threaten an individual to the extent necessary for the legal standard of robbery, something more is needed. If this Court were to accept the position advanced by the State, we would largely annul the common law distinction between robbery and theft. We would be elevating every larceny, or theft, to robbery in instances where the lawful custodian of money is aware that the money is being given to a person who is not entitled to it.

The distinction between robbery and theft has important sentencing implications beyond the statutory penalties available for each crime. In the instant case, although the penalty for robbery is 15 years, with the possibility of parole, robbery constitutes a violent crime. With two previous robbery convictions in his criminal history, the trial judge was constrained to sentence the petitioner to 25 years imprisonment without parole. *See* Maryland Code (2002, 2011 Supp.), § 14–101(d) of the Criminal Law Article. As the trial judge said during the sentencing hearing,

> "I note that ... no one was hurt. No weapon was ever produced in this case. So I believe under the circumstances that the imposition of the sentence [of] 25 years without parole, given the circumstances of this case, and without my knowing the circumstances of the other cases, I believe is unfair and Draconian."

In reviewing this Court's previous holdings on robbery, the facts in this case are most closely related to the circumstances in *West v. State, supra,* 312 Md. 197, 539 A.2d 231. Like *West,* there was no force used to take the property; there was no resistance on the part of the victim, and there was no injury or evidence of fear or intimidation. The State failed to prove an essential element of the robbery charge, and Spencer's robbery conviction should not stand.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH REGARD TO THE ROBBERY AND ASSAULT CONVICTIONS AND REMAND THE CASE TO THE CIRCUIT COURT FOR SENTENCING ON THE THEFT CONVICTION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.*

HARRELL, ADKINS and BARBERA, JJ., dissent.

438

HARRELL, J., dissenting, in which ADKINS and BARBERA, JJ., join.

I dissent. We reverse a trial court's judgment, due to insufficiency of the evidence, only if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Fetrow v. State*, 156 Md.App. 675, 685, 847 A.2d 1249 (2004) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "The hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which is also referred to as intimidation." *Coles v. State*, 374 Md. 114, 123, 821 A.2d 389, 395 (2003) (citing *Spitzinger v. State*, 340 Md. 114, 121, 665 A.2d 685, 688 (1995)). This case turns on whether the evidence adduced at trial by the State shows the presence of force or intimidation, or permits a reasonable jury to infer force or intimidation from that evidence.

Spencer was charged and convicted of robbery, theft over $500, and second degree assault. On appeal, he challenges only the sufficiency of the evidence to sustain the robbery conviction. The first-level facts are uncontested. On 26 December 2006, at approximately 3:20 p.m., Spencer, accompanied by another person, drove onto the site and entered the business office of the Jiffy Lube automobile service center on Baltimore National Pike in Catonsville, Maryland. While his colleague sat in the waiting room, Spencer walked up to the cashier, Tyrone Stinnette, and stated to him: "Don't say nothing." Upon hearing this statement, Stinnette handed over the cash drawer to Spencer; whereupon Spencer and his confederate, with the cash drawer in hand, drove away.

Unlike theft, robbery is a crime against persons. In *West v. State*, 312 Md. 197, 539 A.2d 231 (1988), where the victim was unaware that her purse had been taken until she saw the perpetrator running away with it, the Court concluded there was no evidence of force or threat of force employed, hence a theft occurred, but not a robbery. In our analysis in *West*, we observed that there was no minimum threshold of force or threat of force required "so long as it is sufficient to compel

the victim to part with his property." *West,* 312 Md. at 205, 539 A.2d at 234 (quoting *Cooper v. State,* 9 Md.App. 478, 265 A.2d 569 (1970)).

When asked at trial what transpired on 26 December 2006, Stinnette replied: "[W]e got robbed." When asked to elaborate, he answered that "money was took" and pointed to Spencer as the person who took it. Thus, a reasonable jury could conclude that, as Petitioner and Stinnette were face-to-face when the statement "[d]on't say nothing" was uttered by Spencer, a reasonable inference or connotation of menace could be drawn because Petitioner's verbal and non-verbal assertions were sufficient, in context, that the victim "knew what was going on," and "wasn't taking no chances," as he testified. The victim felt compelled to part with the money or face a risk of escalation by Spencer. This is classic intimidation. A reasonable jury could infer from the testimony that Spencer was not benignly at Jiffy Lube that day to exchange money for an oil change or other automotive service, nor was his statement a request for quiet because his tinnitus was acting up.

It is well known that responsible corporate employers frequently instruct their employees that their personal safety is more important than resisting an attempted robbery, so they should give up the property rather than risk personal harm. A reasonable jury could infer that Stinnette, because he stated repeatedly that he knew what was taking place when Spencer confronted him, refused to place his health or life in danger over mere money.

Petitioner downplays the significance of his words, "[d]on't say nothing." Under our law, robbery is "the felonious taking and carrying away of the personal property of another from his person or in his presence by violence or putting in fear." *West,* 312 Md. at 202, 539 A.2d at 233 (1988) (citing *Williams v. State,* 302 Md. 787, 792, 490 A.2d 1277 (1985); and *Hadder v. State,* 238 Md. 341, 354, 209 A.2d 70, 77 (1965)). The record in this case supports the jury verdict that Petitioner obtained a thing of value from the victim's presence by intimidation.

By departing with the cash drawer and driving away, Petitioner established the intent to deprive Stinnette of the cash in the drawer.

Spencer aims to distinguish his case from *Coles*, 374 Md. 114, 821 A.2d 389 (2003). He points out that *Coles* involved clear demands for money from bank tellers, through passed notes that contained the phrases "put some money in the bag," "no one will get hurt," and "no alarms thank you." The actions in the present case, which caused enough trepidation in Stinnette's mind as to induce him to handover the cash drawer, are not unlike the note in *Coles* stating "no alarms thank you."

Although I am not suggesting that Spencer is the very embodiment of Lex Luthor, his conduct in this case could be viewed as a criminal calculation to hide in the margins of the distinctions between theft and robbery so as to minimize his downside exposure if, as, and when he might be brought to justice. If that was the case, the jury penetrated the charade and returned a sustainable verdict of guilty of robbery. Spencer's sole salvation is in application of the merger principle at sentencing.

I would affirm the judgment of the Court of Special Appeals and the jury in the Circuit Court for Baltimore County.

Judge ADKINS and Judge BARBERA authorize me to state that they join in the views expressed in this dissent.