OPINION OF THE COURT
George L. Jurow, J.
Does the attempt by a juvenile, from a moving subway train, to take a handbag from a woman standing on the station platform constitute attempted robbery within the meaning of section 160.00 of the Penal Law, when there is no resistance by, or physical contact with, the victim? This question of apparent first impression must be answered in the affirmative.
The facts of the case are uncontroverted. On August 18, 1982 at approximately 5:15 p.m. on the southbound “A” train subway station at Euclid Avenue in Brooklyn, a transit police officer observed the respondent standing between two subway cars. As the train began to move out of the station, the respondent reached out and attempted to remove a handbag from the shoulder of a woman standing on the station platform. The respondent missed, failing even to touch his intended victim, but was subsequently arrested by the officer who observed his entire conduct. The intended victim was never located or identified.
Respondent argues that no physical force was utilized or attempted to be utilized by respondent that would place the *265 act within the definition of robbery as set forth in section 160.00 of the Penal Law which provides:
“§ 160.00 Robbery; defined.
“Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
“1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
“2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.”
Petitioner relies on People v Santiago (62 AD2d 572, affd 48 NY2d 1023). That case dealt with a situation similar to the present matter in that the defendant also attempted to snatch the purse of a woman standing on the station platform, as the train pulled out, from his position between the cars of the moving train. In Santiago, the defendant was charged with a felony murder, since the attempted taking of the purse resulted in injuries which caused the victim’s death. The court there concluded that the facts constituted a sufficient basis for a finding of robbery, as opposed to a larceny, thereby providing the underlying felony for the felony murder charge.
There are, however, two major differences between the facts of Santiago (supra), and the instant case.
First, in Santiago, the victim actively resisted the defendant’s attempt to take her purse. The court characterized the victim as having been “dragged forward by the momentum of the train as she and the defendant engaged in a one-sided tug of war over her purse.” (62 AD2d 572, 579, n 3.)
Second, in Santiago, the victim sustained serious physical injuries, which ultimately caused her death. In the instant case, there were no injuries, nor even physical contact with the intended victim.
The question presented is whether the robbery statute can be so construed as to apply to the facts of the instant case, notwithstanding the above-noted differences in rela *266 tion to the fact pattern in Santiago. This court concludes that an attempted robbery charge is properly sustained on the facts in the present case in that the physical force involved is sufficient to bring the facts within the definition of a robbery.
The key distinction between robbery and larceny is the use or threatened use of physical force. (Penal Law, § 160.00.) It is concededly true that most courts in this country that have historically construed the nature of the force necessary to distinguish a robbery from a larceny have focused on the presence or absence of resistance by the victim. See People v Santiago (supra), for a review of this line of cases. The general principle that has been derived from these cases, which extend as far back as the oft-cited 1882 case of McCloskey v People (5 Parker Cr Rep 299), is that a purse snatch per se, without any resistance by the victim, is a larceny, not a robbery. The respondent in this case attempts to characterize his actions as governed by this general principle.
However, the majority in Santiago (62 AD2d 572, supra) dismissed the historical precedents as “grappling with hypertechnical definitions of force” having limited value as to the type of crime before the court. (62 AD2d, at p 577.) The court found the requisite physical force in the defendant’s use of the “forward momentum of a moving train, to prevent or overcome resistance to the taking of * * * [the deceased’s] pocketbook”. (62 AD2d, at pp 579-580.) Significantly, the majority in Santiago went on to note that “Even assuming that there was no resistance, the extreme danger created by defendant’s method of operation must be classified as such an aggravated form of theft as would constitute a robbery.” (62 AD2d, at p 579.)
In focusing on the serious risk of physical danger to the victim implicit in the type of modus operandi employed in this kind of subway crime, the majority in Santiago sensibly brought the argument back to the overriding purpose of the robbery distinction as a type of aggravated theft developed to protect the victim from “injuries which may result from peculiarly dangerous means devised for accomplishing misappropriation” (Note, 54 Col L Rev 84). “To the extent that the method of perpetration increases the likeli *267 hood of the misappropriation or of physical and mental harm to the victim, severer punishments must be meted out.” {Id., at p 109.)
The method of robbery utilized by the respondent in this case has its origin in a uniquely urban crime, and underscores the increasing concern of subway commuters who perceive the subway system as unsafe. A subway commuter standing at or close to the edge of a subway platform is inherently vulnerable to risk of serious injury in the face of an attempted theft from his or her person. This risk, stemming from the position of the victim on the edge of a platform from which he or she may easily be dislodged, is doubly compounded as in this case where the victim was, first, carrying a shoulder handbag with a strap that could, if pulled, propel the victim onto the tracks, and second, subjected to the increased force stemming from the momentum of the train acting as an extension of the respondent’s arm. (See, also, People v Cephas, 110 Misc 2d 1075 [moving subway train may constitute a dangerous instrument].) In short, the “risk threshold” of a potential victim under such circumstances is sharply lower, and consequently, a perpetrator’s conduct is more likely to create an aggravating threat to the victim.
Since resistance by a potential victim under these circumstances would increase the danger, the absence of resistance by the victim should not be construed as material. Also, the fact that the victim was not injured is also immaterial in defining the act as an attempted robbery (except as it may affect the degree of the robbery); whether or not injury actually results becomes a random variable that follows the respondent’s dangerous behavior. Rather, in summary, the focus in this factual situation must be on the actions of the respondent in exposing the victim to serious risk of injury.
Therefore, the court finds beyond a reasonable doubt that respondent committed acts which if done by an adult would constitute the crime of attempted robbery in the third degree, a violation of sections 110.00 and 160.05 of the Penal Law, a class E felony.