539 A.2d 231

Troy WEST

v.

**STATE of Maryland.**

**No. 115, Sept. Term, 1987.**

Court of Appeals of Maryland.

March 31, 1988.

Motion for Reconsideration Denied May 2, 1988.

Gary S. Offutt, and George E. Burns, Jr., Asst. Public Defenders (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

Appellant West was charged in two criminal informations in the Circuit Court for Baltimore City with robbery, assault with intent to rob, simple assault, and three counts of theft. The court (Ross, J.) found West guilty under a general verdict and sentenced him to ten years' imprisonment. We must consider several questions relating to the sufficiency of the evidence to support the judgment and whether a new trial on one or more of the theft counts should be ordered.

## I

From the transcript of West's trial, and the accompanying record, we draw our essential facts. About 6:30 in the evening on June 5, 1985, shortly after she left a drugstore in Baltimore City, Carmen Guilford was the victim of a purse snatching. In her own words:

> "I purchased a money order for the amount of two hundred and sixty-nine dollars from the drugstore and I stopped in the liquor section for a can of beer, my son was with me. Then I walked down Park Heights Avenue and I was going across Park Heights Avenue where the elementary school is there where the incident happened. As we were walking across the field a man just snatched my purse from my hand and he ran, that's when I noticed my pocketbook was gone when he ran."

Asked if she had an opportunity to see the person who took her purse, Guilford responded:

> "No, I just got the description from the bank, he was wearing a blue sweat suit with a hood over his head, I couldn't see him from the front.
>
> Q  Did your son give a description to you?
>
> A  My son said that he had seen him."

When Guilford's son testified, he was asked to make a courtroom identification of the purse snatcher. West was then present in the courtroom. The following colloquy occurred:

"Q  Did you see the fellow?

A  I seen his face.

Q  Is he present today?

A  No.

Q  You don't see him?

A  No."

The pharmacist who sold Mrs. Guilford the money order was called by the State as a witness. He testified that about twenty minutes after the sale Mrs. Guilford returned to the drugstore. As a result of his conversation with her he checked the money order's receipt number. "Some time after" that, the pharmacist testified, "two young men came into the store and requested that the money order be cashed." The pharmacist identified West as the young man who had possession of the money order. When West told the pharmacist that he wished to cash the money order, the pharmacist responded that he would not cash the money order because it had been reported stolen. West and his partner then ran from the store, leaving the money order. When West returned the next day to claim the money order the pharmacist called the police. A policeman arrived while West was still in the store. The policeman testified that when he asked West how he had obtained the money order, West responded first that he had purchased it, then that he had found it, and still later that it had been given to him. The policeman arrested West.

Testifying on his own behalf, West denied that he ever gave the policeman conflicting stories and insisted that he had purchased the money order at the drugstore from someone other than the pharmacist. He purchased the money order, he testified, to give to a Mr. Brown. When Mr. Brown demanded cash, said West, he returned to the drugstore to reconvert the money order to cash.

At the close of the evidence, Judge Ross rendered his verdict as to all counts of both informations; he said:

"The verdict is guilty. I have no doubt in my mind that the Defendant indeed snatched the purse and was in possession of the unexplained stolen pocketbook. It seems just incredible and inconsistent with the testimony of the State's witness and neither of them had any reason to fabricate."

The court imposed a ten year sentence on the robbery count, and merged the other convictions into the greater offense. The first of the two informations had charged West with robbery, assault with intent to rob, assault, theft of property valued at $300 or greater, and theft of property valued at less than $300. In both theft charges the items allegedly stolen were Mrs. Guilford's pocketbook and its contents, which in addition to the $269 money order included about $16 in cash, a "walker radio with earphones," and Mrs. Guilford's identification. These two theft charges differed only as to whether these items altogether valued less or more than $300. The second criminal information had charged West with a single count of theft under $300, and referred only to the $269 money order.

On appeal to the Court of Special Appeals West contended that the trial court was clearly erroneous in convicting him. He argued that the snatching of Mrs. Guilford's purse was not accompanied by sufficient force to constitute robbery. Citing *Raiford v. State*, 52 Md.App. 163, 447 A.2d 496 (1982), *rev'd in part on other grounds*, 296 Md. 289, 462 A.2d 1192 (1983) as dispositive, the court in an unreported opinion rejected West's contention. Rejecting also West's argument that the evidence was insufficient to establish that he was the one who snatched Mrs. Guilford's purse, the court affirmed the trial court's judgment.

The proffered evidence against West fits into two categories. The first is evidence probative of his involvement in

the purse snatching incident; the second is evidence concerning West's actions at the drugstore. As will be shown, the distinction between the two categories is crucial, for although the theft count in the second criminal information can be supported by the drugstore evidence alone, all counts in the first information require the sufficiency of both categories of evidence to satisfy the burden of proof necessary for conviction.

## II

As in the Court of Special Appeals, West, on two grounds, attacks the sufficiency of the evidence to support his conviction. The first, aimed at invalidating the inference that he was involved in the purse snatching incident, attacks all five counts of the first criminal information. The second is directed specifically at the robbery count. West asserts that even assuming *arguendo* he was the purse snatcher, the evidence does not establish all elements of the crime of robbery. We turn first to this argument.

Robbery retains its common law definition in Maryland, though the penalty for this crime is fixed by statute. *See* Md.Code (1957, 1987 Repl.Vol.) Art. 27, § 486. We have defined the offense as the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear, *see Williams v. State*, 302 Md. 787, 792, 490 A.2d 1277 (1985); *Hadder v. State*, 238 Md. 341, 354, 209 A.2d 70 (1965); or, more succinctly, as larceny from the person, accompanied by violence or putting in fear, *see Ledvinka v. Home Ins. Co.*, 139 Md. 434, 439, 115 A. 596 (1921); *see also Raiford v. State*, 52 Md.App. 163, 169, 447 A.2d 496 (1982); *Harrison v. State*, 3 Md.App. 148, 152, 238 A.2d 153 (1968). We focus here on the requirement that the larceny [1] be accompanied

---

1. The former common law offense of larceny is now subsumed in Maryland's consolidated theft statute, Md.Code (1957, 1987 Repl.Vol.)

by violence or putting in fear. West contends that the evidence does not establish this element, since, he asserts, Mrs. Guilford was never put in fear, nor was she the victim of actual violence.

The requirement that the larceny be accompanied by violence or putting in fear has ancient origins in the common law. In William Hawkins' *Treatise of the Pleas of the Crown,* published in 1724, in the chapter entitled "Of Robbery," it is said:

"Sect. 2. Larceny from the Person of a Man either puts him in Fear, and then it is called Robbery; or does not put him in Fear, and then it is called barely, Larceny from the Person.

Sect. 3. Robbery is a felonious and violent Taking away from the Person of another, Goods or Money to any Value, putting him in Fear."

John Latrobe's *Justice's Practice under the Laws of Maryland,* published in 1826, is evidence of the early adherence in Maryland to this requirement, for Section 1252 of that authority states:

"Open and violent larceny from the person, or *robbery,* is the felonious and forcible taking from the person of another, of goods or money to any value, by violence, or putting him in fear. The putting in fear distinguishes it from other larcenies. 4 *Blac.Comm.* 242." *Id.* at 284.

Merely affirming the antiquity of this requirement, of course, leaves unanswered the question of the degree of violence or putting in fear that is requisite. We have not previously considered this precise question. A number of cases decided in the Court of Special Appeals, however, provide a framework for making the necessary determination of degree. *Cooper v. State,* 9 Md.App. 478, 265 A.2d

---

Art. 27, Sections 340–344, which merges all the formerly distinct larceny-like common law offenses, as well as the offense of receiving stolen property, into a single crime of theft. *See Rice v. State,* 311 Md. 116, 532 A.2d 1357 (1987). We use "larceny" here solely for brevity, to denote the felonious taking and carrying away of the personal property of another.

569 (1970) is particularly apposite. The prevailing view among other jurisdictions also points to a clear answer.

Before turning to these cases, we note as background that many English cases from the seventeenth, eighteenth, and nineteenth centuries support West's position. For example, in *Steward's Case*, when a gentleman's hat and wig were snatched from his head without force, this was held to be larceny only. 168 Eng.Rep. 247–48 n. 3 (1690). In *The King v. Macauley*, 168 Eng.Rep. 246 (1783), a boy was carrying a bundle down a street when the defendant ran past him and snatched it suddenly away. The court stated: "The evidence in this case does not amount to a robbery; for although the prisoner snatched this bundle from the boy, it was not with that degree of force and terror that is necessary to constitute this offense." A similar case is *The King v. Baker*, 168 Eng.Rep. 147 (1783).

In *Cooper*, the evidence showed that the appellant, who had been convicted of robbery, had stuck his hand into the pocket of one Jack Glazer, grabbed Glazer's money and ran. According to an eyewitness, the pockets of Glazer's bermuda shorts "sort of stuck open," revealing the money. Glazer, who was "high" from drinking at the time of the incident, testified that he felt the appellant's hand reach "all the way in" his pocket and that the incident "happened in a few seconds and it startled me." On these facts the court held that the crime was larceny, not robbery. The court correctly set forth the applicable law concerning robbery:

> "The violence may be actual as by the application of physical force, or it may be constructive as by intimidation or placing the victim in fear. Where, as here, it is clear that the victim was neither intimidated [n]or put in fear, there must be evidence of actual violence preceding or accompanying the taking. Actual violence, it is said, implies personal violence; if there is any injury to the person of the owner in the taking of the property, or if he resists the attempt to rob him, and his resistance is overcome, there is sufficient violence to make the taking

robbery, however slight the resistance." *Id.* 9 Md.App. at 480, 265 A.2d 569 (citations omitted).

As to the degree of force used, the court in *Cooper* said that it was immaterial

"so long as it is sufficient to compel the victim to part with his property. In other words, sufficient force must be used to overcome resistance and the mere force that is required to take possession, when there is no resistance, is not enough, *i.e.,* the force must be more than is needed simply to move the property from its original to another position; there must be more force than is required simply to effect the taking and asportation of the property. Thus, it is not robbery to obtain property from the person of another by a mere trick and without force, or to pick another's pocket without using more force than is necessary to lift the property from the pocket; nor is it robbery to suddenly snatch property from another when there is no resistance and no more force, therefore, than is necessary to the mere act of snatching." *Id.* (citations omitted).

Two other pertinent cases decided by the Court of Special Appeals present facts that, in contrast to those in *Cooper,* show sufficient violence or putting in fear to support a robbery conviction. In *Williams v. State,* 7 Md.App. 683, 256 A.2d 776 (1969), the victim testified that she began screaming from fear when the appellant approached her and that when the appellant grabbed her pocketbook, her bag of money and the pocketbook dropped to the ground. The court held this was sufficient evidence for the trier of fact to find that the victim resisted the taking and that her resistance had been overcome. *Id.* at 686, 256 A.2d 776. In *Raiford, supra,* the victim testified that as she was preparing to enter his car she felt something on her shoulder. Turning around, she saw that the appellant had ripped the shoulder strap bag off of her shoulder. The appellant then fled with the purse. The court held on these facts that the purse snatching was accompanied by sufficient force to constitute robbery. The court reasoned that the necessary

resistance to the taking need not emanate entirely from the victim, but can arise also from the attachment of the article stolen to the victim's person or clothing. There, the fact that the victim's shoulder strap was ripped from her arm clearly showed the requisite resistance to the taking. 52 Md.App. at 169–70, 447 A.2d 496.

Cases from other jurisdictions recognize that a mere snatching of an object from the possession of another may involve the requisite element of force to constitute robbery. *See, e.g., Jones v. Commonwealth,* 112 Ky. 689, 66 S.W. 633 (1902); *In re Michael G.,* 117 Misc.2d 264, 458 N.Y.S.2d 170, 172, *aff'd,* 97 A.D.2d 794, 468 N.Y.S.2d 591 (1983) (stating that "the focus in this factual situation must be on the actions of the respondent in exposing the victim to serious risk of injury," not on the presence or absence of victim resistance); *Commonwealth v. Brown,* 506 Pa. 169, 484 A.2d 738, 741–42 (1984). The prevailing view, however, appears to be that the mere snatching or sudden taking away of the property from the person of another does not constitute sufficient force, violence, or putting in fear to support a robbery conviction. *See, e.g., People v. Patton,* 76 Ill.2d 45, 27 Ill.Dec. 766, 389 N.E.2d 1174 (1979); *Jones v. State,* 467 S.W.2d 453 (Tex.Crim.App.1971); W. LaFave & A. Scott, *Criminal Law* § 8.11(d) (student ed. 1986); C. Torcia, *Wharton's Criminal Law* § 479 (14th ed. 1981); Annotation, *Purse Snatching as Robbery or Theft,* 42 A.L.R.3d 1381 (1972, Supp.1987).

The State attempts to liken the facts *sub judice* to those in *Raiford* and to distinguish them from those in *Cooper.* We, however, are of the view that the present facts are most similar to the *Cooper* fact situation and that the governing principles are the ones enunciated in that case. As in *Cooper,* the victim here was never placed in fear; she did not resist; she was not injured. The only force applied was that necessary to take the pocketbook from her hand. Unlike the purse in *Raiford,* no shoulder strap attached Mrs. Guilford's purse to her person. A fair reading of her testimony supports only one conclusion—that she was not

aware she had been dispossessed of the purse until she saw the purse snatcher running from her. In view of these facts we can only conclude, as in *Cooper*, that the evidence was not sufficient to establish all elements of the crime of robbery.

The State contends that recent cases, most notably *In re Michael G.*, *supra*, manifest an evolutionary trend away from common law distinctions between robbery and larceny, toward a more flexible inquiry into the magnitude of the risk posed by the defendant's conduct. We are urged to adopt this approach but are not persuaded to do so. If flexibility is a virtue, so too is certainty, and, in light of the pertinent cases reaching back at least to 1690, we think certainty is promoted by drawing the line between robbery and larceny where we have drawn it.

### III

West's second attack on the sufficiency of the evidence is directed at the inference that he was the purse snatcher in the school yard incident. We are mindful that in reviewing this matter the judgment of the circuit court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. Maryland Rule 886; *Dixon v. State,* 302 Md. 447, 450, 488 A.2d 962 (1985). We are mindful also that in criminal appeals the constitutional standard of review is "whether after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dixon, supra,* 302 Md. at 450, 488 A.2d 962; *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980). Against this backdrop we must consider whether the inference that West was the purse snatcher is adequately supported by the evidence.

At the outset we note that no direct evidence identified West as the purse snatcher. To the contrary, there was direct evidence that he was not the purse snatcher. Mrs.

Guilford testified that she saw the man only from the back, and that he was wearing a hood over his head. Her son testified that he had seen the man's face. Asked to make a courtroom identification with West present in the court-room, the son stated that he did not see the man. The proposition, then, that West was involved in the school yard incident rests entirely on an inference drawn from circum-stantial evidence arising from West's involvement in the events at the drugstore.

The State contends that the evidence clearly showed West in possession of stolen property, *i.e.*, in possession of the $269 money order stolen from Mrs. Guilford. Possession of stolen property, the State asserts, if unexplained or falsely explained, will justify either of two inferences: that the possessor was a receiver of stolen property, or that the possessor was the thief. On the present facts, the State implies, the inference that West was the thief entails the conclusion that he was the purse snatcher. West, on the other hand, though conceding that the evidence clearly shows him in possession of the stolen money order, takes a different view of the inferences that may be drawn from possession of stolen property. Such inferences, West as-serts, are inferences of fact only, not of law, and may be vitiated or rebutted by contrary facts. In the present case, West maintains, the direct evidence that he was not the purse snatcher, coupled with the fact that he was accompa-nied by another young man when he first came to the drugstore with the money order, vitiates the inference that he was the thief of Mrs. Guilford's purse, leaving intact only the inference that he was the receiver of the stolen money order.

West's view is the correct one. *Jordan v. State*, 219 Md. 36, 148 A.2d 292 (1959), a case in which we focused on the nature of the inferences that may be drawn from possession of stolen property, supports West's position. In that case the defendant was discovered late at night near his automo-bile, which had become mired in the mud while being backed into a pathway in the woods. A floor mat was underneath

the right rear wheel of the vehicle. Approximately seventy-five feet farther into the woods along the pathway, a stolen automobile was discovered, "or what was left of it." This vehicle, which had been stolen only six hours earlier, had been almost completely stripped. The backseat, hood, back bumper, wheels, radiator, etc. had been removed and neatly stacked in a pile at the rear of the stolen car. The floor mat had also been removed but was not found in the pile. Except for the mat, no parts of the stolen car were found near or in the defendant's automobile. As the policeman who discovered the defendant was walking back to investigate what he later found to be the stolen property, he heard a "thump" behind him; on investigation he found that the floor mat had been thrown fifteen feet into the woods.

On these facts in *Jordan* the defendant was charged in separate counts with larceny and receiving stolen property. The defendant at his nonjury trial presented no corroboration for his explanation that after returning his girl friend to her residence, he had attempted to turn around, even though he wasn't going in the wrong direction, and had thus become mired in the pathway in the woods. He was able to show, however, that his clothes and gloves were clean, even though the car must have been dismantled in the few hours before the policeman discovered it. The trial court found him not guilty of larceny (a felony) but guilty of receiving (a misdemeanor at that time). On appeal the defendant attempted to overturn the conviction by arguing that the court could not properly find him guilty of receiving because the law presumes that one in possession of recently stolen goods is the thief. Rejecting this, the Court stated:

> "It is true that recent and exclusive possession of the fruits of crime, if unexplained or explained falsely, justifies the inference that the possessor is the criminal; but the inference of guilt to be drawn from possession alone is never one of law, it is an inference of fact. *People v. Galbo*, [218 N.Y. 283] 112 N.E. 1041, 1044 (N.Y., 1916).
>
> . . . .

"In the case at bar, we think ... that the trial judge was justified in finding that there were more persons than one involved in the larceny of the stolen vehicle, and the fact that the defendant's hands and clothing were clean so shortly after the stolen car had been dismantled made the inference that he was a receiver just as reasonable as the inference that he was the thief, or one of several thieves; hence the court was correct in giving the defendant the benefit of the conclusion that would mitigate his guilt, namely, that he was a receiver of the stolen property and not the thief. This is no more than an application of the broad principle of the criminal law that when there is a reasonable doubt as to which of two or more crimes the accused has committed or where there is a reasonable doubt in which of several degrees a defendant is guilty, he can be convicted only of the least serious crime or the lowest degree." *Id.* at 46–48, 148 A.2d 292.

In *Jordan* we relied upon *People v. Galbo,* 218 N.Y. 283, 112 N.E. 1041 (1916), a case in which Judge Cardozo lucidly dealt with the principles involved. In that case the defendant was connected with a murder only by evidence that he attempted to hide the body. There was evidence that the defendant was not the murderer, for the victim was a strong, athletic man who had been killed in a violent struggle; the defendant on the other hand was physically handicapped and though arrested within thirty-six hours of the murder showed neither scratch nor bloodstain. The court was called on to determine whether on this evidence a verdict that the defendant was a principal in the murder could be sustained. Reversing the conviction, Judge Cardozo wrote:

"It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal....

"Only half of the problem, however, has been solved when guilty possession fixes the identify of the offender.

There remains the question of the nature of his offense. Here again the facts must shape the inference. Is the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that, if nothing more is shown, we may take him to be the thief. But as soon as evidence is offered that the theft was committed by some one else, the inference changes, and he becomes a receiver of stolen goods....

"The problem is a hard one. To solve it we must steadily bear in mind that the inference of guilt to be drawn from possession is never one of law. It is an inference of fact. Wigmore on Ev. Sec. 2513. Other facts may neutralize it, or repel it, or render it so remote or tenuous or uncertain that in a given case we should reject it.... If the circumstances make one inference just as reasonable as the other, we must give the defendant the benefit of the conclusion that would mitigate his guilt." *Id.* 112 N.E. at 1044 (citation omitted).

We think the principles set forth in *Jordan* and *Galbo* are apposite to the present case. Here the evidence presented is of a kind that has in prior case law supported either of two inferences. Specifically, in the present case, the evidence—possession of the stolen money order—supports these two inferences: that West was the thief, ergo the purse snatcher; or, that someone else—quite possibly the youth who accompanied West into the drugstore—was the thief, and West was the one to whom the thief may have entrusted the money order, with the aim of having it converted to cash. As in *Jordan* and *Galbo,* in the present case there is evidence that weighs against the inference implicating the more serious offense, here robbery. This contrary evidence is the testimony of Mrs. Guilford's son that West was not the purse snatcher. On these facts we think the principles applied in *Jordan* and *Galbo* require the conclusion that West was the receiver, not the purse snatcher. This accords also with the principle, deeply rooted in the common law, that a conviction upon circumstantial evidence *alone* is not to be sustained unless the circum-

stances are inconsistent with any reasonable hypothesis of innocence. *See, e.g., Hodges Case,* 168 Eng.Rep. 1136–37 (1838); *Galbo, supra,* 112 N.E. at 1045; L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 158 (1904); *cf.* J. Stephen, *A History of the Criminal Law of England* 438 (1883).

The question remains of the status of the theft counts, concluding as we have that there was no legally sufficient evidence that West was the purse snatcher. West can only be convicted of either of the two theft counts in the first criminal information if it can be shown that he was in possession not only of the money order, but also of Mrs. Guilford's purse and its other contents.

In *Jordan* we addressed the question whether possession of one stolen item will justify an inference of possession of other items stolen at the same time. First, quoting *Polansky v. State,* 205 Md. 362, 366, 109 A.2d 52 (1954), we stated the general rule:

" 'Manual possession is not necessary to constitute receiving. However, one is guilty of so receiving as soon as one obtains a measure of control or dominion over the custody of the goods. And such receiving may be by an agent or through the instrumentality of another....' " 219 Md. at 44, 148 A.2d 292.

Applying this rule to the facts in *Jordan,* we held that possession of the stolen floor mat did justify an inference of possession of the stolen car and its other parts, because the defendant's possession of the floor mat, his proximity to the other stolen goods, and his implausible, uncorroborated account of how his car happened to be backed up into the woods at that location rendered such an inference of constructive or potential possession reasonable and rational. On the present facts, however, a like inference is not warranted. Here no facts sufficient to establish constructive possession have been shown. It was implausible under the facts in *Jordan* that the defendant would possess the floor mat and not the remainder of the stolen automobile. It is not implausible, however, that West would possess the

money order and not the purse, when, as the evidence showed, a party other than West was the purse snatcher.

### IV

■ West urges that he be granted a new trial on the sole remaining count, theft (under $300) of the money order. Although he concedes that sufficient evidence was adduced to convict him on this charge, he contends that the trial court actually based its verdict upon an erroneous finding of fact that West was the thief. West implies that because the trial court was acting on the erroneous assumption that West was the purse snatcher, it failed to make the necessary finding of fact that West was the receiver of the stolen money order.

We see no merit in this contention. In the present case all issues necessary to the money order theft charge were resolved. The evidence was uncontroverted that the $269 money order that West attempted to cash belonged to Mrs. Guilford, and no relevant question of value remains. The court was not obligated to state the grounds of its verdict, see Md.Rule 4–328; *Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974), so it is no basis for West's position that the court failed to state explicitly that it found that West was the receiver. *See Rice v. State,* 311 Md. 116, 532 A.3d 1357 (1987). There is nothing in the grounds that were stated by the court negating any element of the money order theft charge, for there is no inconsistency whatsoever in believing (erroneously) that West was the purse snatcher and believing (correctly) that West was in possession of the stolen money order at the drugstore. We conclude, therefore, that no grounds exist for a new trial. A new sentencing hearing must be provided.

AS TO INFORMATION NO. 28523230: JUDGMENT REVERSED. AS TO INFORMATION NO. 28523231: JUDGMENT AFFIRMED, EXCEPT AS TO THE SENTENCE; SENTENCE VACATED AND CASE REMANDED TO

**214**

THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW SENTENCING HEARING; EACH PARTY TO PAY OWN COSTS.