Steven SOMERVILLE (97–A–1921), Petitioner,

v.

**James CONWAY, Acting Superintendent of Attica Correctional Facility; and Eliot Spitzer, Attorney General of New York, Respondents.**

Nos. 02–CV–6679 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

Aug. 13, 2003.

Richard Joselson, The Legal Aid Society, New York City, for Petitioner.

Steven Somerville, Attica, NY, Pro Se.

Kings County District Attorneys Office–Generic, Shulamit Rosenblum, Kings County District Attorney, Brooklyn, NY, for Respondents.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

Petitioner was convicted in New York State of burglary and assault-a conviction which he does not contest before this court. He instead indirectly challenges the legality of his sentence.

Petitioner was sentenced as a second violent felony offender to 18 years in prison with no possibility of parole. His status as a second violent felony offender was predicated on a previous conviction in Maryland for robbery with a deadly weapon. As a second violent felony offender, he was exposed to an enhanced sentence and, should he commit another violent felony, he is now subject to a grave, mandatory maximum term of life in prison.

In the instant application for a writ of habeas corpus, petitioner claims that he received ineffective assistance of trial counsel due to his lawyer's failure to argue before the sentencing court that the Maryland offense for which he was convicted is not equivalent to any New York felony and that as a result he should not have been classified as a second violent felony offender.

Petitioner made this claim on direct appeal to the Appellate Division. In its reply brief on direct appeal, the People conceded that petitioner should not have been classified as a second violent felony offender: "Because respondent does not contest the fact that the Maryland crime of Robbery with a Deadly Weapon does not necessarily establish every element of any New York State felony, respondent is constrained to concede that, had defense counsel raised this argument, the outcome of the sentencing proceeding would likely have been different." Respondent's Br. at 65 n. 26. Even so, the Appellate Division affirmed petitioner's sentence, stating summarily that petitioner "received meaningful assistance from his trial counsel." *People v. Somerville*, 283 A.D.2d 596, 724 N.Y.S.2d 656, 657 (2d Dep't 2001). In doing so, the Appellate Division apparently accepted the People's argument that, although petitioner was prejudiced by counsel's failure to object, his representation did not fall below an objective standard of reasonableness measured under prevailing professional norms. Leave to appeal to the New York Court of Appeals was denied.

Faced with the same claim of ineffective assistance in the instant proceeding, respondent has changed its position, no longer conceding that the crime for which petitioner was convicted in Maryland could not be used as a predicate for petitioner's second violent felony offender status.

A hearing was held in this matter. Petitioner was represented by counsel, who was present in person. The court directed petitioner to be present by telephone but administrative problems at the prison prevented his attendance.

For the reasons discussed in this memorandum, the petition is granted.

## I. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims.

*See Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, at *4 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## III. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The

Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of

counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir. 2003).

█ As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

## IV. Analysis of Claim

Petitioner claims that he received ineffective assistance of trial counsel due to his lawyer's failure to argue before the sentencing court that the Maryland offense for which he was convicted is not equivalent to any New York felony and that as a result he should not have been classified as a second violent felony offender. The claim is exhausted and was not procedurally defaulted in the state courts. It may therefore be addressed by this federal court on the merits.

█ Under New York law, an out-of-state conviction can serve as a predicate

for sentencing a defendant as a second violent felony offender only if it includes all the essential elements of a New York State violent felony:

For the purpose of determining whether a prior conviction is a predicate violent felony conviction the following criteria shall apply:

(i) The conviction must have been in this state of a class A felony ... or of a violent felony offense ... or in any other jurisdiction of an offense which includes all of the essential elements of any such felony for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized and is authorized in this state irrespective of whether such sentence was imposed.

N.Y. Penal Law § 70.04(b). As a general rule, "this inquiry is limited to a comparison of the crimes' elements as they are respectively defined in the foreign and New York penal statutes." *People v. Muniz*, 74 N.Y.2d 464, 467–68, 548 N.Y.S.2d 633, 547 N.E.2d 1160 (1989). As one of the great experts on criminal law, Chief Judge Stanley Fuld, explained, examination of the indictment rather than of the abstract language of the statute to determine its operative facts is improper. *See People v. Olah*, 300 N.Y. 96, 98, 89 N.E.2d 329 (1949) ("Since an indictment not infrequently contains immaterial and nonessential recitals, we cannot determine the 'crime' with which a defendant is charged—and, of course, of which he is convicted-by mere examination of the indictment's allegations. To ascertain that 'crime,' we must of necessity consider the statute which created and defined it and upon which the indictment was based.").

In Maryland, a defendant may be found guilty of the common-law offense of armed robbery if he is found to have used force against his victim, even if his intent to steal property had not yet been formed at the time he uses force. *See West v. State*, 312 Md. 197, 539 A.2d 231, 233 (1988) (robbery defined as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear"); *Stebbing v. State*, 299 Md. 331, 473 A.2d 903, 914 (1984) (defendant is guilty of robbery even if "the intent to steal was not formed until after the [application of] force"). In New York, in contrast, the intent to steal must exist at the time that force is used. *See* N.Y. Penal Law § 160.00 ("A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of," *inter alia*, "[p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking."); *People v. Smith*, 79 N.Y.2d 309, 312, 582 N.Y.S.2d 946, 591 N.E.2d 1132 (1992) ("Logically, a defendant cannot act with a specified purpose unless an intent is formed to carry out that purpose. Thus, courts in this State have uniformly read the 'for the purpose' language as an intent element of the statute.").

A defendant may therefore be convicted under the Maryland statute of a felony for conduct that would not be felonious in New York. For instance, a defendant who assaulted his victim without an intent to take his property and who then stole his victim's watch as an afterthought would be guilty of felony robbery in Maryland but not in New York. *See People v. Rice*, 61 A.D.2d 758, 402 N.Y.S.2d 191 (1st Dep't 1978) (felony-murder conviction reversed where there was insufficient evidence of the underlying robbery felony, because there was evidence that "the taking of the property was an afterthought and that the intent to rob did not precede the killing"). Respondent concedes this point. *See* Aff. in Opp. to Pet'n for a Writ of Habeas Corpus at 6.

Pursuant to the "general rule" enunciated in *Muniz* and *Olah,* petitioner's Maryland conviction for robbery may therefore not be used to support petitioner's status as a second violent felony offender. There is an exception to the general rule, however, "where the foreign statute under which the defendant was convicted renders criminal *several different acts,* some of which would constitute felonies and others of which would constitute only misdemeanors if committed in New York." *Muniz,* 74 N.Y.2d at 468, 548 N.Y.S.2d 633, 547 N.E.2d 1160 (emphasis added). In such a situation, "the recitals in the accusatory instrument that describe the particular act or acts underlying the charge are necessary to the extent that they isolate and identify the statutory crime of which the defendant was accused" and "may properly be considered in determining whether Penal Law § 70.06(1)(b)(i) has been satisfied." *Id.*

This approach was exemplified by the New York Court of Appeals in *Gold v. Jackson,* 5 N.Y.2d 243, 183 N.Y.S.2d 799, 157 N.E.2d 169 (1959), where the defendant had a prior conviction in Florida for burglary. In Florida, it is felonious either (1) to break into and enter a building with intent to commit a felony therein, or (2) to break out of a building having entered with intent to commit a crime therein. In New York, the latter crime is only a misdemeanor for unlawful entry. The Court of Appeals, looking to the information to which the defendant had pled guilty, noted the "operative and material" fact that the defendant was accused only of the crime of breaking into a dwelling rather than of the crime of breaking out of one. The defendant's prior Florida conviction was therefore properly used to determine his status as a third felony offender. *Id.* at 246, 183 N.Y.S.2d 799, 157 N.E.2d 169.

The instant case, however, does not fall under the exception employed by the court in *Gold.* To the contrary, the instant case is controlled by *Muniz,* where the Court of Appeals distinguished *Gold* and explained that it is proper to look to the indictment only where the indictment might shed light on which particular act, among several distinct acts encompassed in the definition of a state felony, petitioner was convicted of:

> This is not a situation such as that in *People ex rel. Gold v. Jackson (supra),* where the foreign jurisdiction's crime could be committed in several different, alternative ways, some of which would constitute felonies if committed in New York and others of which would constitute only misdemeanors *see,* [*People v. Gonzalez,* 61 N.Y.2d 586, 590–591, 475 N.Y.S.2d 358, 463 N.E.2d 1210 (1984)]. Indeed, the facts in this case are indistinguishable in principle from those in *Olah.* Schematically, in both *Olah* and this case, the foreign crime was rendered a felony because of a particular aggravating circumstance—value in *Olah* and intent here—which included, but was broader in coverage than, the analogous aggravating element of the New York felony.... In this case, the foreign crime's aggravating circumstance, criminal intent, encompasses the intent to commit a "crime" as required by New York law, but it also applies to less culpable levels of intent, notably, the intent to commit what would be a mere violation if committed in New York. In such circumstances, as we held in *Olah,* it is improper to look to the factual allegations in the accusatory instrument as a means of clarifying the nature of the defendant's claimed predicate crime, since " 'the controversy did not turn upon [them]' " (*People v. Olah, supra,* at 100, 89 N.E.2d 329, quoting *Donahue v. New York Life Ins. Co.,* 259 N.Y. 98, 102, 181 N.E. 62).

*Muniz,* 74 N.Y.2d at 470, 548 N.Y.S.2d 633, 547 N.E.2d 1160.

■ *Muniz* clarifies that it is proper to look to the accusatory instrument only if doing so will identify which of several discrete acts the defendant was convicted of. Where the difference between the definition of the foreign crime and the New York crime turns on "a particular aggravating circumstance" such as intent, recourse to the indictment is improper because the aggravating circumstance was not relevant to the defendant's guilt or innocence of the foreign crime.

■ In the present case, respondent contends that looking to the Maryland indictment is proper because it demonstrates that the criminal act petitioner committed would qualify as a violent felony under New York law. In particular, respondent notes that petitioner pled guilty to an indictment stating that he "feloniously with a dangerous and deadly weapon, did rob the aforesaid Complainant and violently did steal [an automobile] from the aforesaid Complainant." Although there is an intuitive appeal to such an argument, the New York Court of Appeals expressly rejected this approach, over a dissenting vote, in *Muniz:*

> The fallacy in this analysis is its failure to distinguish between the specific criminal acts required by a penal statute and the various ways in which the statutory crime may be committed. The former concerns the crime's statutory elements and is relevant to the Penal Law § 70.06(1)(b)(i) inquiry; the latter concerns the underlying facts and, under *Olah* (*supra*), is not relevant to that inquiry.

> Moreover, under the dissenter's formulation, the cases in which the indictment could be considered would be expanded dramatically. Since most penal statutes establish crimes that may be factually committed "in a number of ways," conduct that violates a particular statute may always be recast in terms

that make it appear to be a discrete criminal act by simply substituting a factual description of the conduct for a statutory element, as the dissenter has done.

74 N.Y.2d at 471, 548 N.Y.S.2d 633, 547 N.E.2d 1160.

Respondent in the instant case suggests that this court follow precisely the path deemed improper by the court in *Muniz*. This court is constrained by controlling authority from the New York Court of Appeals and must therefore refuse adoption of respondent's proffered approach. This court concludes, as the State itself conceded when addressing the claim on direct appeal, that petitioner's Maryland conviction for robbery should not have been used by the sentencing court in its determination that petitioner was a second violent felony offender.

Having determined that petitioner should not have been deemed a second violent felony offender, it remains for this court to determine whether trial counsel was ineffective for failing to raise this argument at sentencing. In order to gain habeas relief, petitioner must initially show both that counsel's performance fell below an objective standard of reasonableness measured under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052.

■ The "prejudice" prong of *Strickland* is easily dealt with. Had counsel raised the instant claim at the sentencing proceeding, petitioner would not have been adjudicated a second violent felony offender and he would have been eligible for—although not guaranteed-a sentence far below what he was given. It is, perhaps, likely that the sentencing court would have exercised its discretion, even in the ab-

sence of second violent felony offender status, to sentence petitioner to 18 years in prison. The court did note—after defense counsel decided to "remain silent" on whether the Maryland conviction was for a violent felony—that "It doesn't matter, because the only way it would matter is if I were to give [petitioner] less than 10 years. He's arraigned for a B when this one is violent, and the other one is not eight to 25. The range for C is five to 15. So there's considerable overlap." Sentencing Minutes at 19. Even if this court were to conclude that petitioner would have received the same prison sentence absent his second violent felony offender status, he has nonetheless demonstrated that he was prejudiced by being adjudicated as belonging to this category of criminal. In the event he commits another felony at some point in the future, he will be exposed to a mandatory maximum prison term of life in prison. *See* N.Y. Penal Law § 70.08. Petitioner has therefore shown that he was prejudiced by counsel's failure to raise the argument.

Petitioner must also demonstrate that defense counsel's failure to raise his claim was performance which fell below an objective standard of reasonableness measured under prevailing professional norms. Respondent suggested on direct appeal, and the state courts apparently agreed, that it would take "superior representation" to raise such a claim during a sentencing hearing and that petitioner is not constitutionally entitled to such representation.

■ Effective counsel must be familiar with the sentencing law governing a defendant's case. *See Aeid v. Bennett,* 296 F.3d 58, 62–63 (2d Cir.2002) (deficient performance where defense counsel misunderstood potential sentence faced by client). In the analogous federal context, "familiarity with the structure and basic content of the Guidelines (including the definition and im-

plications of career offender status) has become a necessity for counsel who seek to give effective representation." *United States v. Day,* 969 F.2d 39, 43 (3d Cir. 1992).

■ As discussed above, the standard for determining whether an out-of-state felony qualifies as a predicate offense in New York is manifested both in statute and in the case law. *See* N.Y. Penal Law § 70.04(b); *People v. Olah,* 300 N.Y. 96, 89 N.E.2d 329 (1949). Maryland's broad definition of robbery with a dangerous weapon is clear from its case law. *See Stebbing v. State,* 299 Md. 331, 473 A.2d 903 (1984). Given that the only legal question open at petitioner's sentencing was his status as a second violent felony offender and that resolution of the court's adjudication of that status might have significant effects on both petitioner's current sentence and on any sentence he might receive if he were to commit a subsequent felony, defense counsel was obliged to be familiar with this law.

Failing to raise the purely legal question of the propriety of petitioner's classification as a "second violent felony offender" before the sentencing judge could not have been motivated by any strategic rationale. Respondent does not contend otherwise.

It may be that a defense lawyer's failure to advance a purely legal and clearly meritorious argument in the absence of any strategic reason not to is representation that *per se* falls below an objective standard of reasonableness measured under prevailing professional norms. It is unnecessary to make such a global pronouncement in the instant case, however, because under the present circumstances it would not have required exceptional measures for a defense lawyer to become familiar with the pertinent statutes and case law.

Reasonably competent counsel would have been sufficiently familiar with the

relevant law to have brought to the sentencing court's attention the impropriety of adjudicating petitioner a second violent felony offender based on his Maryland conviction for robbery with a dangerous weapon. Defense counsel's performance fell below an objective standard of reasonableness. measured under prevailing professional norms and there is a reasonable probability that, but for counsel's unprofessional errors, petitioner would not have been adjudicated a second violent felony offender. With all due respect, the New York Court of Appeals decision was an unreasonable application of clearly established Supreme Court precedent as set forth in *Strickland.*

## V. Conclusion

The petition for a writ of habeas corpus is granted. Petitioner shall be released unless within sixty days respondent (1) resentences, or (2) commences a new trial. The judgment is stayed until all federal appellate proceedings are completed.

SO ORDERED.